case number 12-4390, Hilda Solis versus Postal Police Officers Association, oral argument, that's going to exceed 15 minutes per side, Robert Kamenschein for the appellant. May it please the court, I'm Robert Kamenschein with the Department of Justice, representing the Department of Labor. With the court's permission, I'd like to reserve three minutes for rebuttal time. Your Honors, a calendar month is not a lot of time for a union member to decide whether to complain to the Department of Labor about his own union's election. But in deference to the autonomy of the union, that's all the statute permits. Now, in this case, contrary to about 50 years of guidance from the Department of Labor, the union wants to effectively shorten that time and to start the clock running before the decision is actually received by the member. That's unfair to the member who acted in accordance with this longstanding guidance, and it undermines the goal of free and fair elections for labor union. Now, the district court in the case recognized that the case turned on the meaning of the word, the statutory term and regulatory term, obtains. When does the member obtain the decision? And as I said before, basically since the 1960s, in guides published by the Department of Labor and in litigation, the department consistently interpreted obtains to mean receives. Now, the district court found that that statutory term was ambiguous, and it also concluded that the Department of Labor's interpretation was a permissible interpretation. But the court rejected that interpretation, invoking its own intuition, what it considered to be a natural reading of the language, and a concern about the convenience of the union, the difficulty that the union would have if the government's interpretation were adopted. No court of appeals has ruled on that issue of decided versus received. This court's Dole decision, which loomed very large before the district court, addressed the situation in which there was a debate between the union and the Department of Labor over the union's internal processes. And when those processes were concluded, the union was contending it was much earlier than the department, and the department prevailed in that case. So we say to the court that upholding the Department of Labor's interpretation would preserve approximately 50 years of consistent guidance by the department. It would further the cause of union democracy and would maintain a national consistency on this issue. And in terms of the convenience of the union, and I have to say that the Department of Labor is not just solely concerned with the union members, it's concerned with the unions as well. But as we said in our brief, that specter of inconvenience to the unions is really just that. The union is in control of how it communicates with its members, and there are all kinds of means for very quick communication in this day and age. And certainly the union has means to verify if a member receives the decision. And in this very case, contrary to what the district court said— When did the member get actual notice, in fact notice? The member got actual notice on December 14th, 2011, as the receipt from the certified mail. The member signed for the letter, so there was a certificate from the post office that indicated that the member had signed for it. December 14th? Correct, Your Honor. So, you know, the debate here— 31 days in December. Right, it was a count, it was—right, right, Your Honor. The member faxed the complaint to the Department of Labor on January 13th. This is a postal union at Christmas time, right? Ironically, ironically. The member faxed the complaint to the union on January 13th. Now, the union says that the member's time expired on January 9th, four days before the member faxed the complaint. The Department of Labor says the time expired on January 14th, a day after. So that under the Department's reading, Murray, the member was a day early in submitting the complaint. I would point out that the— What do you think is the date? The date on which the—the last date would be January 14th, according to—under the Department of Labor's reading. That would be a calendar month from the date that Murray received the decision, which was December— That's including all the holidays. They don't count. They don't count, Your Honor. It's a 30-day— Well, the language is a one-calendar month. Okay. I would point out that the union here has brought up a couple points that were not really in front of the district court. One of those points, the first point in the union's brief, deals with this question of whether the word obtaining has any relevance at all in the case, notwithstanding the fact that the whole debate before the district court was about the meaning of obtaining. That's the way the district court wrote its decision, and we've explained in our brief why we think that the union is incorrect there. The other thing the union did, again, a ground which was not before the district court, was the argument that the union had not stated—I'm sorry, the Department of Labor had not stated a claim upon which relief could be granted. The union's motion to dismiss didn't raise that point. The district court never considered it. We understand that the court can affirm an alternative ground. As we said in our reply brief, we think that it's a matter of judicial administration and, in fairness to the Department of Labor, which would have never had a chance even to possibly amend its complaint if this had been brought up before the district court, that if the court agrees with the department on the timing issue, that the appropriate disposition would be to remand the case and allow the district court to deal with any issues regarding the complaint itself. Is it your understanding this spun out of an election between the former president and vice president of the union? Correct. And the matter of contention was whether there were any sort of shenanigans during the union election. Yes, Your Honor, that there was unfairness—speaking in broad terms. Yes, sir. That there was unfairness in the election, in the use of this email list. Giving somebody an email list and not giving it to the other candidate. Right. The vice president went out and accumulated these email addresses, compiled the list. Some of this I'm saying is from what the investigation showed. It would not be before the record and would have to be thrashed out, but basically put it on his own computer. The opponent, the president, didn't have access to this. Emails were sent out using the list, and the contention is that that violates the statute. And the department's interest in this is what? The department's interest—it's interesting the way the statute is constructed, because it was originally proposed that a member could go directly to court, and ultimately the way the statute was drafted, it put the Department of Labor between the member and the court, and the member has to complain to the Department of Labor, and the department has to make its own judgment. The language of the statute is probable cause. The department has to conclude that the complaint states probable cause to believe that there's a violation and that the violation may have adversely affected the election. And so this is a case where the department made that judgment and decided to go forward in district court to advance the complaint that was submitted by the member. And so what we're here for is to see that the department and the member himself gets a day in court on the merits of the complaint about the unfair election. If the court doesn't have any questions. Certainly not. Good morning. Good morning. May it please the court, I am Michael Anderson, representing the Postal Police Officers Association. The Department of Labor says that it's unfair that the statutory period, the one month, run at a time that the complaining incumbent president who lost the election did not in fact receive the union's denial of his internal appeal. Well, Congress was aware of that problem of non-receipt, and that's why when it outlined the two possible events that trigger the running of the one month, it said that it runs either one, from the point at which the member has exhausted the remedies available, and that occurred on Friday, December 9th, or two, who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation. And such a person may file a complaint with the secretary within one calendar month thereafter. And what this case turns on is what thereafter refers to. What thereafter refers to is the expiration of three months without obtaining a final decision. So that even if the government is correct that obtained means the actual receipt of the letter, that is signing off on it, Congress intended the one month to run from the expiration of three months without obtaining such a final decision. Now in this case, Scott Murray filed his union objections on September 12th, 2011. On December 12th, 2011, three months had elapsed. At that point, his one month to file under 482A2 began to run. And the way that Congress has designed that non-receipt rule means that complaining union members are not at the mercy of the Postal Service. They don't have to monitor their union's mail rooms. It has nothing to do with when they actually do receive. If they want to know what their deadline is under 482A2, all they have to do is calculate three months from the date they filed their initial objections, and then add one month from the expiration of that three month period. How late do you think he was in filing? One day. One day? One day. In other words, on Monday, December 12th, three months had elapsed, which means that he had until January 12th. Which was a Sunday? No, January 12th was a Thursday. Monday, December 12th was a Monday. All relevant dates, as it turns out, are on business days. And the calendar month calculation, as counsel admits, doesn't take into account holidays or 31 days or 28 days. And I cited the Meriwether v. City of Memphis case that discusses the operation of that rule. Now, as courts know from enforcing statute of limitations, there can't be a sliding scale. It's a bright line question. You're either timely or you're not. And interpreting the timeliness of requirements of 482, the court should consider the congressional policy behind Title IV, which is to limit the limitations period as tightly as possible. It's only one month, which counsel admits is not a lot of time. It reflects the congressional objective, and I'm quoting from the Supreme Court's Dunlop v. Bachowski case, not to permit individuals to block or delay resolutions of post-election disputes, but rather to settle as quickly as practicable the cloud on the incumbent's titles to office. Now, the alternative, so in other words, under 482A2, Scott Murray was untimely because he had revoked his union remedies. Excuse me. Let me just ask you. You keep quoting Congress, but what do you have where Congress says that obtained means receipt? It sounds as though you're suggesting that Congress has resolved that issue. I don't see anything in the briefs that says that. If obtained means simply that the union made its decision, then the date is even earlier. The date goes back to December 9th rather than December 12th. Okay, but what do you have to cite in legislative history or something like that, that this is the interpretation that Congress wants? Because you keep saying that that's what Congress wants, but I don't see that in the brief that Congress has unambiguously addressed this specific question. So if you keep quoting Congress like that, you should be able to point us to where Congress said that. Sure. On page 18 of my brief, I cite the Senate report of the LMRDA in 1959, which was quoted in a later Fourth Circuit case that outlined what Congress intended. If the member is denied relief by the union or can obtain no decision from the union one way or the other within three months, he may complain to the secretary. Since time is of the essence, no complaint may be entertained, which is filed more than one month after the union has denied a remedy or the three-month period has expired. And the three-month period here is the three months of not obtaining a final decision. Well, that doesn't answer the question. The question we're trying to decide is whether the cutoff is when the member receives the notice in the mail or whether the applicable deadline is when the notice is put in the mail. The language you just quoted there doesn't address that at all. What I'm saying is that the time— Yeah, but you keep saying that Congress has decided this, and that's not what this says. This doesn't dispose of any— Now, maybe you've got some other legislative history you can point to, but I wish you would quote Congress correctly if you're going to do that. Right. Well, I'm quoting 482A2, which says that the one month runs from when a member has invoked such remedies without obtaining a final decision within three calendar months. And that's not just the legislative history that I read. It's also discussed in this Court's Martin decision, where it's interpreted that that means that the one month begins to run after three months of nonreceipt have elapsed. So, in other words, if he filed the internal complaint on September 12th, on December 12th, three months had elapsed, and his one-month period runs from that point. That's the way I'm construing 482A2. The point is you have to construe it. It doesn't specifically and unambiguously resolve the issue that we have to decide, which is what I thought you were suggesting, that all we had to do was look at— well, the best thing, if we're trying to figure out what Congress did, is to look at the statute, and it's not in the statute. And that piece of legislative history doesn't resolve it either. Well, what it says is if— mailing, it doesn't really resolve that. If you've gone three months without getting the union's decision, your one month starts at that point. Let me ask you, but you're not— you're basing the union's decision here, or taking the point, that was sending him, sending the plaintiff, a notice in the mail. You got a return receipt, is that right? Yes. All right, if your point is that the time starts to run, we're getting about the three-month no-action time. Yes. But where there wasn't, Eric, it starts to run from the time the decision was issued, right? Right. Why in the world do you send him a darn letter? If the trigger is when the decision comes down and not when he gets word of it, why in the world do you send him a letter? Well, unions do it because they're democratic organizations, Your Honor. That's why. And really, what we're talking about here is whether there is a discovery rule that informs the construction of the limitations period. When do you say he had actual notice of the union's conclusion? He signed for the letter on Wednesday, December 14th. He didn't have any notice of it before that? We don't have any record of that in the complaint. We're basing that on the complaint. That's right. But if I could, I'm sorry. Go ahead. No, no. This goes to the discovery rule problem. There are a lot of federal statutes, including in labor law, where the given statute of limitations does not begin to run until the union member or the worker has noticed the issue. For instance, in a duty of fair representation case. That's not the case for LMRDA election challenges. And this court dealt with that issue in Brock v. Operating Engineers. The purpose of the rule here that the person who is affected, the union member who is affected as a complainant, gets notice. I mean, notice requirements are normally for the purpose of having a person who is adversely affected or has a grievance to get the information. Not to serve the union's purpose, but the notice is to serve the purpose of whoever is aggrieved about it. Right. And that was the Department of Labor's argument in Brock v. Operating Engineers that this court rejected. What happened in Brock v. Operating Engineers was that in the course of the investigation of some election complaints, the Department of Labor came across other violations which had not been alleged in a timely objection. And the Department of Labor said, well, we can still proceed on this because the member didn't have notice of those other violations. And this court ruled that there is no discovery rule in Title IV of the LMRDA, that the Congressional purpose of providing closure on union election cases is strong enough that even if there is a clear violation, if the kind of You're saying the notice requirement is really written here in the statute for the benefit of the union and not the person who is aggrieved. Well, what I'm saying is that Congress gave members a remedy if they don't get notice to be able to file within one month after three months have elapsed. The CFR, which kind of fleshes out, don't you think, the Congressional Act? Yes. Code of Federal Regulations says, it uses the word, obtains an unfavorable decision, which is that he must file his complaint within one calendar amount after obtaining the decision. And then we drop down to the Department of Labor standard, which uses the word, receives. I'm sorry, I'm looking at the regulation. CFR 452.135. If the union member has not obtained a final decision within three calendar months, he has the option of filing his complaint or waiting until he has exhausted the available remedies within the organization. That's the statute. That's right. That's the reg, that's right. And what I'm saying is that this court's policy against a discovery rule in Title IV LMRDA cases applies equally here. Congress gave Scott Murray an option if he felt that he had not received within three months. But if he wants to rely on exhaustion, exhaustion has to be determined objectively and not subjectively. If there were a discovery rule buried in the basic exhaustion requirement, then Brock v. Operating Engineers would have had to be decided differently. Tell me, in the light of your, you keep going back to the Congressional Act, but what does the word, obtain, and the word, receive mean, the former in the CFR, and receive in the Department of Labor, their management standards? Well, there's a difference between the CFR and the informal guidance that they cite in their papers. Much of that was not even before the district court. The CFR doesn't use the word, receive. Obtain. Obtain, right. I said, obtain, it's the Department of Labor. And it says if the member has not obtained within three months, he has the option of filing or waiting until he is exhausted. At that point, if the decision is unfavorable, he will have one month in which to file his complaint. And, Your Honor, if I may speak in my remaining time to the alternative ground for affirmance. The bad act that's alleged here is that the vice president, Chris Vitolo, used email addresses which were in the union's files. This is not a conversion of the union's property because the LMRDA guarantees all candidates, incumbents, and dissidents the right to access to the names and addresses of members with which to use to communicate to send campaign materials. The objection is that there was some sort of discrimination that the executive vice president, Chris Vitolo, used the email addresses when Scott Murray did not. That might be a plausible claim if Scott Murray were an outsider to the union administration. But as the incumbent president, which they finally admit in their opposition to the motion to dismiss, as a matter of law, Scott Murray had access to those email addresses because he was the president of the union. So what you're saying is on the merits of the complaint, this fellow loses anyway. Yes. So you don't have to reach the limitations issue because when it's admitted that Scott Murray was the incumbent president, the government's discrimination claim falls apart because by definition he had access to the same email addresses. And there's nothing illegal about any candidate using the email addresses of the union because they're entitled to that as a matter of statute. And if the court has no further questions, I thank you for your time. Can we really get into that? Because we're trying to decide if the complaint can be filed on behalf of an agreed person. So are we really entitled to get into the merits that you're now bringing up here? Yes, because it is all plain on the face of the materials that the government submitted basically in support of their motion for summary judgment. That's correct. You have the ability to reach that alternative ground. Unlike the government, we're not relying on materials that are outside the record before you. But the court below did not decide that ground, did it? No, that's true. The ground that you're bringing up, the district court never addressed that. That's true. The district court didn't because the opening complaint and our opening motion to dismiss had to take at face value the allegation that Scott Murray was merely a member in good standing. And it was only in the later materials that they filed that they admitted that he was in fact the incumbent president. All right. Thank you. Thank you. Any rebuttals? Very little. Mr. Kamenschein, what do you say to his last point here on the merits? I take it the Department of Labor thinks there's more to this than that. Absolutely, Your Honor. And that line that he's drawing between officers and members, that's not rooted in the language of the statute. As we quoted, certainly under the statute, the union is obliged to maintain a list of names and regular conventional addresses of members. And 30 days before an election, a union member has a right to, a candidate has a right to inspect that and to look at that list and compare it with a list that he or she might have. The statute goes on to say that, as to any other lists, that those have to be administered on a nondiscriminatory basis. It doesn't talk about members versus officers. The point is, this guy is the president. He certainly got access to everything the vice president had access to. Well, Your Honor, we don't know in the sense that this does get, to some extent, outside the record. And that's really why it needs to be back in the district court. But the investigation of the department showed that the vice president went around and sort of canvassed union members and came up with this email list, which he then put on his own personal computer. And the allegation is that the opponent did not have access to that list that was then used in the campaign. And the department concluded that there was probable cause to think that use of that list may have, which is the statutory one, may have affected the outcome. Was there something improper or just more aggressive, smarter campaign? Well, it was improper in the sense, and also the vice president then put in requisitions to the union for reimbursement for the time he spent gathering that list. So union resources were, financial resources were used. So these are all the matters that, if the case went forward, would be thrashed out before the district court. And I think the more we discuss it, the more it shows how inappropriate it is to do it in this venue. You know, however, your opposing counsel, if I understood him correctly, seemed to say that you had admitted the allegations that go to the merits. I don't think there was any admission. That's what it sounded like he was saying. I think when he says admitted, I think the big revelation is, you know, admitted that Murray had been the president of the union who was then ousted by the vice president, if you want to call that an admission. He's making a big deal of it, but I don't think it is. It's a big deal in terms of the statute. So you don't agree that you've admitted the underlying merits? No, not at all, Your Honor. All right. Not at all. I see that you're out of time. Well, thank you very much. Thank you very much, and the case is submitted.